UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FLAGSTAR BANK, FSB,

       Plaintiff,                             Case No. 13-10290

vs.                                         HON. MARK A. GOLDSMITH

SOUTHERN STAR CAPITAL, LLC, et al.,

       Defendants.
_____/

## OPINION AND ORDER DENYING
## DEFENDANTS' MOTION TO TRANSFER VENUE (DKT. 6)

### I. INTRODUCTION

This is a breach of contract case. Plaintiff Flagstar Bank alleges that Defendant Michael Anderson and Defendant Reliance Mortgage Company Inc. (Reliance) breached a purchase agreement for mortgage loans. Flagstar further alleges that Defendant Southern Star Capital, LLC d/b/a Reliance Mortgage Company (SSC) has successor liability for Reliance's conduct, that Anderson is the alter ego of both entities, and that corporate formalities should be disregarded. Reliance, apparently an inactive Texas corporation, has not appeared in the case. Before the Court is Anderson's and SSC's motion to transfer the case to the Northern District of Texas (Dkt. 6). Flagstar submitted a response brief opposing the motion and Anderson and SSC filed a reply brief. Oral argument was heard on May 9, 2013 and the matter is now ripe for decision. For the reasons explained below, the Court denies the motion to transfer.

### II. BACKGROUND

According to the complaint, Flagstar entered into a purchase agreement with Reliance in 2001. Compl. ¶ 8 (Dkt. 3-2). The purchase agreement had a choice of law clause stipulating that

the parties would resolve disputes under Michigan law. Id. ¶ 9. The purchase agreement also has a forum selection clause, which requires litigation to be filed in a Michigan court in Oakland County or in the U.S. District Court for the Eastern District of Michigan. Purchase Agreement ¶ 7.3 (Dkt 3-2). Flagstar contends that the three Defendants were acting together as the "agents, servants, employees, or partners of each other." Id. ¶ 10. Flagstar further contends that Anderson is the alter ego of Reliance and SSC, so as to allow Anderson to perpetrate fraud. Id. ¶¶ 12-13.

Flagstar alleges that four loan packages presented by Defendants amounted to fraud. In August 2004 and December 2007, Flagstar funded mortgage loans for two residential properties in Texas and Reliance provided Flagstar with notes and mortgages. Id. ¶¶ 15, 21. The August 2004 loan was the "Grimes loan"; the December 2007 loan was the "Sifford loan." Flagstar sold the loans to Fannie Mae. Id. ¶¶ 17, 23. However, Flagstar alleges that the property appraisals were fraudulent because they failed to disclose the true value of the property. Id. ¶¶ 16, 22. Because Flagstar had to indemnify Fannie Mae for both loans, it incurred a loss of $118,845.30 on the Grimes loan and a $124,625.52 loss on the Sifford loan. Id. ¶¶ 18, 24. Flagstar demanded indemnification from Reliance, but Reliance refused to pay. Id. ¶¶ 19, 25.

Flagstar also funded two mortgage loans for a residential property in Colorado (the "Archuleta loans"). Flagstar discovered after the closing on the loans that the sellers' names had been forged on the deed and the note and mortgage were void. Id. ¶ 28. Because Flagstar had sold the loans to Fannie Mae, it had to repurchase them and incurred a loss of $84,787.70. Id. ¶¶ 29-30. Reliance refused to indemnify Flagstar. Id. ¶ 31.

Flagstar filed a three-count complaint in Oakland County state court. Flagstar alleges breach of contract and fraudulent/negligent misrepresentation by Reliance and Anderson.

2

Flagstar further alleges successor liability against SSC. According to Flagstar, "Reliance Mortgage Company" is the trade name of SSC and Reliance. Id. ¶ 71. Flagstar further alleges that both SSC and Reliance have the same business purpose (the origination of mortgage loans), the same management, and constitute a singular enterprise with different corporate forms. Id. ¶¶ 72-75. Flagstar seeks $325,308.52 in damages. Id. ¶ 75.

Anderson and SSC removed the case and then filed the instant motion to transfer venue.

### III. ANALYSIS

Anderson and SSC argue that this case should be transferred to the Northern District of Texas because (i) the case could have been brought in that district, and (ii) that district is a more convenient forum for the parties and witnesses. Anderson and SSC state that under the general venue statute, 28 U.S.C. § 1391, the case could have been brought in the Northern District of Texas because SSC and Anderson reside in that district. Furthermore, a substantial part of the events or omissions giving rise to Flagstar's claims occurred in that district. That is, the loan packages were negotiated and prepared in the Northern District of Texas.

With regards to Anderson and SSC's convenience argument, they cite ten factors a district court should consider in determining a request to transfer venue. Def.'s Mot. at 4-11 (citing Jones v. GNC Franchising Inc., 211 F.3d 495, 498-499 (9th Cir. 2000)). These factors include the location where relevant agreements were executed, the state that is most familiar with the governing law, the difference in costs of litigation in the two forums, the availability of compulsory process for nonparty witnesses, and the ease of access to sources of proof. Id. Defendants insist that consideration of these factors requires the Court to transfer the case to the Northern District of Texas. These arguments are repeated in Defendants' reply brief.

In response, Plaintiff argues that the transfer of venue factors weigh in favor of denying Defendants' motion. Pl.'s Mot. at 9, 11-18. Plaintiff also notes that the venue statute, 28 U.S.C. § 1391, is irrelevant; instead, the applicable statute is 28 U.S.C. § 1441(a). Id. at 10.

Transfer of venue is governed by 28 U.S.C. § 1404(a), which states that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Id.[1] District courts have "broad discretion to determine when party convenience or the interests of justice make a transfer appropriate." Reese v. CNH Am., 574 F.3d 315, 320 (6th Cir. 2009) (quotation marks omitted). See also Stewart Org. v. Ricoh Corp., 476 U.S. 22, 29 (1988) (explaining that "1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness") (quotation marks and citation omitted). The "party moving for transfer for the convenience of the witnesses must demonstrate, through affidavits or declarations containing admissible evidence, who the key witnesses will be and what their testimony will generally include." Rinks v. Hocking, No. 10-1102, 2011 WL 691242, at *3 (W.D. Mich. Feb. 16, 2011).

Courts weigh several factors in determining whether to transfer a case: (i) the convenience of the parties and witnesses, (ii) the accessibility of evidence, (iii) the availability of process to make reluctant witnesses testify, (iv) the cost of obtaining willing witnesses, (v) the practical problems of trying the case most expeditiously and inexpensively, (vi) the interests of justice. Reese, 574 F.3d at 320. Furthermore, "unless the balance is strongly in favor of the

---

[1] Flagstar correctly points out that venue for this case is governed by 28 U.S.C. § 1441(a), not 28 U.S.C. § 1391, as Anderson and SSC contend, because the case was removed. Kerobo v. Southwestern Clean Fuels, Corp., 285 F.3d 531, 534 (6th Cir. 2002) ("Venue in removed cases is governed solely by § 1441(a).").

defendant, the plaintiff's choice of forum should rarely be disturbed." Id. (citing Dowling v. Richardson-Merrell, Inc., 727 F.2d 608, 612 (6th Cir. 1984)).

The Court first considers the factors relating to witnesses, namely the convenience of the parties and witnesses, the availability of process to make reluctant witnesses testify, and the cost of obtaining willing witnesses. Anderson and SSC insist that the Northern District of Texas is more convenient because they "have had no contacts with Michigan." Defs.' Mot. at 8. Specifically, Anderson asserts, through counsel, that he will be inconvenienced to appear in Michigan, rather than in Texas where he lives. Anderson and SSC also assert that "countless nonparty witnesses" involved with the loan packages would need to be located and compelled to appear in Michigan. Id. at 9. However, Anderson and SSC have not submitted any evidence, in the form of affidavits or documents, and do not specify who these individuals are or what their role was. Yet, the authority cited by Anderson and SSC demonstrates that courts look for some evidence to indicate which venue is more favorable. See Cook v. Atchison, Topeka, and Santa Fe Ry., 816 F. Supp. 867 (D. Kan. 1993) (granting motion to transfer from Kansas to Oklahoma where movant had provided list of 16 witnesses, 11 of whom resided in Oklahoma); Gundle Lining v. Fireman's Fund Ins. Co., 844 F. Supp. 1163, 1166 (S.D. Tex. 1994) (granting motion to transfer from Texas to New Jersey after finding that the lists of non-party witnesses indicated that a "vast majority of the non-party witnesses, who have the most information concerning the performance of the contract, reside in New Jersey").

In contrast to this, Flagstar states that it has designated witnesses in similar cases and includes the affidavit of Christine Gregory, a recovery analyst at Flagstar. Gregory Aff. (Dkt. 12-12). Gregory states that five other Flagstar employees, who all reside in Michigan, would be potential witnesses. Id. ¶¶ 12-13.

5

Clearly, one side's parties and witnesses will have to get on a plane and go to either Texas or Michigan. Considering the arguments and evidence before it, the Court finds that the witness factors tip in favor of Flagstar based on the lack of evidence presented by Anderson and SSC.

With regards to the accessibility of evidence, the Court finds that this factor does not clearly favor Flagstar or Anderson and SSC. Defendants argue that the evidence will consist of (i) the loan packages and (ii) witnesses who prepared the packages, including experts in appraising residential real estate in Texas. Defs.' Mot. at 9. Defendants note that the judge or jury may have to inspect the properties at issue in this case, two of which are in Texas. Id. Flagstar concurs that the evidence in the case will be the loan documents and witness testimony. Pl.'s Resp. at 15. However, Flagstar states that inspection of the Texas properties is irrelevant because the mortgages at issue have been foreclosed and the properties have been resold. Id. at 15. The Court agrees with Flagstar that there would not be a need to inspect property because this is a breach of contract case that centers upon documents – the loan packages executed between the parties. The handling of witnesses and documents is a routine matter for district courts and the evidence is not more accessible in the Northern District of Texas.

In weighing the practical problem of trying the case most expeditiously and inexpensively, the Court finds that this factor also does not favor a party. Anderson and SSC do not address this factor; but Flagstar argues that, although litigation costs are similar for either venue, the case should remain in Michigan because Flagstar plans to obtain a default judgment against Reliance. Pl.'s Resp. at 16. Flagstar explains that this default judgment will "fix damages" against Anderson and SSC and it would be more efficient to have judgments against all Defendants in the same court. Id. Having three judgments in the same district court may be

more efficient, but Flagstar's contention that it will succeed on the merits of the case is mere speculation, not evidence. The parties, therefore, have not presented facts that would indicate which venue would lead to a more expeditious or inexpensive trial.

The final Reese factor – the "interests of justice" – addresses "public-interest concerns, such as systemic integrity and fairness." Moses v. Business Card Exp., 929 F.2d 1131, 1137 (6th Cir. 1991). In the motion to transfer, Anderson and SSC do not cite Sixth Circuit precedent and do not explicitly argue this factor. However, the factors Anderson and SSC do argue address the "interest of justice" because they generally address fairness in interpreting the purchase agreement executed by Flagstar and Reliance. Defs.' Mot. 5-8, 10. Anderson and SSC assert that the loan packages were negotiated and executed in Texas. But even if this is true, Anderson and SSC do not explain why this would favor a transfer. Id. at 5-6.

With regards to the forum most familiar with the governing law, the purchase agreement contains a choice of law clause and a forum selection clause; the language of the contract shall be governed by Michigan law and disputes shall be adjudicated in an Oakland County, Michigan state court or the Eastern District of Michigan. Forum selection clauses "should receive neither dispositive consideration, nor no consideration, but rather the consideration for which Congress provided in § 1404(a)." Moses, 929 F.2d at 1136. Anderson and SSC argue that they are not signatories to the purchase agreement and, therefore, are not bound by it. However, whether Anderson and SSC are bound by the purchase agreement is an outcome that turns upon the merits of Flagstar's successor liability claim; this argument does not support a transfer of venue to the Northern District of Texas.

Flagstar also makes an argument regarding the "interest of justice," pointing out that keeping the case in Michigan favors justice because of the difference in the statute of limitations

between Texas and Michigan. Under Michigan law, a breach of contract claim has a six-year limitation period, but under Texas law it is four years. Flagstar states that, because some of the mortgage loans originated in 2007 and it filed suit in 2012, transferring to Texas, where the district court might apply Texas contract law, would work an injustice. Pl.'s Resp. at 18 (citing Phelps v. McClellan, 30 F.3d 658 (6th Cir. 1994)).

Anderson and SSC correctly note that it should not be against the interest of justice for them to invoke a defense and that there is no guarantee that the Northern District of Texas would apply Texas law. When cases are transferred, the transferee court will apply the choice of law rules of the transferor court. Id. at 663.[2] A federal district court in Texas, as the transferee court, would apply Michigan choice of law rules and could determine that Michigan law controls. Consequently, the existence of the shorter Texas statute of limitations applies does not favor either party for the interest of justice.

Anderson and SSC have not met their burden of proving that transfer to Texas would be more convenient for the parties or witnesses "through affidavits or declarations containing admissible evidence." Rinks, 2011 WL 691242, at *3. Additionally, as explained above, most of the transfer factors do not favor either party. The balance is not "strongly in favor" of Anderson and SSC and Flagstar's choice of forum should not be disturbed. Reese, 574 F.3d at 320.

---

[2] Moreover, Phelps did not hold that a statute of limitations defense is inherently against the interests of justice. Phelps held that a district court did not abuse its discretion in denying a transfer from the Southern District of Ohio to the Northern District of New York. Phelps, 30 F.3d at 633. The Sixth Circuit explained that the transferee court would have to apply Ohio choice of law rules and would require that the Ohio statute of limitations barred the plaintiff's negligence claim. Id. Transfer, then, was futile. Id.

8

## IV.  CONCLUSION

For the reasons stated above, the Court denies Anderson's and SSC's motion to transfer (Dkt. 6).

SO ORDERED.

Dated:  June 12, 2013  s/Mark A. Goldsmith
      Flint, Michigan  MARK A. GOLDSMITH
                  United States District Judge

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on June 12, 2013.

                s/Deborah J. Goltz
                DEBORAH J. GOLTZ
                Case Manager